IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | No. 3:06-cr-47 |
| ) | (Phillips) |
| ) | |
| DANNY RAY COWARD ) | |

## **MEMORANDUM AND ORDER**

On July 24, 2006, the Honorable H. Bruce Guyton, United States Magistrate Judge, filed a 26-page Report and Recommendation (R&R) [Doc. 15] in which he recommended that defendant's motion to suppress evidence [Doc. 10] be denied. Thus, Judge Guyton recommended that the firearms, ammunition, and drugs[1] that were seized during the warrantless search of the apartment leased by defendant's wife be admitted at trial, as well as all statements made by the defendant after his arrest on November 2, 2005.

This matter is presently before the court on defendant's timely and well-briefed objections to the R&R [Doc. 16], as well as the government's equally well-briefed response to those objections [*see* Doc. 17]. As required by 28 U.S.C. § 636(b)(1), the court has now

---

[1] The defendant is only charged with the drugs and two guns found on his person; he is not being charged with the marijuana, marijuana pipe, electric scales, baggie of crack cocaine, and approximately $2,000 in US currency that was also found and seized from the apartment.

undertaken a *de novo* review of those portions of the R&R to which defendant objects. For the reasons that follow, the court finds itself in complete agreement with Judge Guyton's thorough analysis of the legal issues arising from the suppression hearing conducted by him on July 7, 2006. Consequently, defendant's objections will be overruled, the R&R will be accepted in whole, and the underlying motion to suppress will be denied.

I.

The primary issue in this case is whether the defendant's wife, Karen Denise Coward, gave a knowing and voluntary consent to a search of the parties' apartment. In his objections, defendant contends that there is insufficient evidence in this record to support Judge Guyton's finding that Ms. Coward gave that consent or, if any consent were given, it did not encompass "a full blown search of the parties' apartment." [*See* Doc. 16, p.1]. In effect, defendant challenges Judge Guyton's credibility findings.

In support of its position, the government introduced the testimony of Officers Franzen and Linkins of the Knoxville Police Department (KPD), both of whom were present during the initial search of the apartment, as well as the testimony of Investigator Todd Gilreath, who is with the Organized Crime Unit of the KPD. Investigator Gilreath arrived on the scene after the initial search of the apartment had occurred and obtained Ms. Coward's signature on a consent form. In response, defendant introduced only the testimony of Ms. Coward.[2]

---

[2]That is not to suggest, of course, that the testimony of one witness might not be sufficient to support defendant's position even when juxtaposed with three government

2

The R&R clearly reflects that Judge Guyton carefully weighed and evaluated the testimony of all of the witnesses. On the one hand, Judge Guyton pointed out that Officer Franzen gave detailed testimony of the events and conversations of that day, including specifically the fact that he asked Ms. Coward for permission to "look around" the apartment for narcotics and the fact that Ms. Coward said that was "all right with her" and "no problem." [*See* Doc. 15, p.4]. Moreover, Officer Franzen's testimony was corroborated in large measure by the testimony of both Officer Linkins and Investigator Gilreath. Additionally, Officer Franzen's testimony was corroborated by the audio portion of his in-car recording of the events on the day in question.

On the other hand, Judge Guyton found that Ms. Coward was not a credible witness. In support of his conclusion, Judge Guyton pointed out that Ms. Coward had forgotten or simply did not remember key portions of the conversation she had with the KPD officers. For example, Ms. Coward testified that she "could have forgotten" that she gave those officers consent to search. Likewise, Ms. Coward testified that while she remembered signing forms after Investigator Gilreath arrived, she could neither remember what she signed nor any conversation she had with Gilreath. It must also be noted that Judge Guyton indicated that he could distinctly hear on the audiotape that Officer Franzen asked Ms. Coward, "[w]ould it be okay if we come in and look around for narcotics?" Although Judge Guyton could not discern from the audiotape how Ms. Coward responded

---

witnesses. As will become apparent, it just did not do so in this case.

to this question, he determined that the audiotape reinforced the government's position that the officers did ask Ms. Coward for consent.

Finally, as mentioned by Judge Guyton, it is particularly telling that after the defendant was placed in custody and escorted near Ms. Coward, the defendant inquired, according to Officer Franzen's testimony, "[w]hy did you let them in the apartment?" Ms. Coward then responded, "I didn't think you were here." The court agrees fully with Judge Guyton that this is simply not a response any reasonable individual would make if, in fact, he or she had not given permission to the police officers to search the premises. Rather, this is precisely the type of response someone would give after permitting these officers to enter the residence, only to be surprised to learn that a spouse is still there along with illegal firearms and drugs.

As can be seen from this partial recapitulation of the testimony and other evidence, there is more than sufficient proof supporting Judge Guyton's credibility determination. This is not even a close case. Normally, this court is called upon to determine cases in which the defendant, or the defendant's witness, claims that he or she did not give consent and the police officers testify to the contrary. Even then, the court will defer to the credibility finding by the magistrate judge who had an opportunity to evaluate the demeanor and consistency of the witnesses' testimony. Here, Ms. Coward's testimony fails even to rise to that threshold level. Ms. Coward just cannot remember what occurred

4

on the day in question.  Consequently, defendant's proof on this issue falls woefully short of rebutting the government's overwhelming proof that she gave consent.

One further point must be emphasized.  In attacking the credibility of Officers Franzen and Linkins, defendant highlights the fact that Officer Franzen repeatedly stated that the marijuana seized by Officer Linkins was in "plain view."  Officer Franzen bases his testimony on the undisputed fact that Officer Linkins told him that it was in "plain view."  Defendant, however, points out that Officer Frazen's testimony is belied by Officer Linkins' testimony.  Defendant emphasizes that Officer Linkins found the marijuana inside a tin box on the dresser and that he had to open that box to locate the marijuana.  Therefore, according to defendant, the marijuana was not in "plain view."

In the court's view, this is a subtle distinction which makes no substantive difference.  Obviously, the tin box itself was in plain view on the dresser, even though the marijuana itself was not.  In all likelihood, that is precisely what Officer Linkins meant when he made his report to Officer Frazen regarding the discovery of the marijuana.  The Sixth Circuit has observed that "it is particularly important to allow searches of closed containers in cases where the suspect is told that officers are searching for drugs, since drugs are often stored in ... containers."  *United States v. Grant*, 112 F.3d 239, 240 (6th Cir. 1997).  In this case, because the court finds that Ms. Coward gave the officers consent to search, she likewise gave them consent to search inside the tin container which was in plain view on the dresser.  The court finds that there is not any conflict in this testimony by these

5

police officers on this issue. Accordingly, defendant's objection on this basis will be overruled.

II.

Defendant's next objection to the R&R is that there is insufficient evidence to support a finding that Ms. Coward consented to a full-blown search of the premises, *i.e.*, a search of drawers, closets, and closed boxes and containers. The court strongly disagrees. Again, given the fact that Ms. Coward gave consent to the search, and given the further fact that there is no credible proof in this record that Ms. Coward ever withdrew or even limited the consent she gave to the officers, the officers had every right to conduct the search precisely as they did. As the government correctly points out, there is no obligation on the KPD officers conducting the search to advise Ms. Coward, after the marijuana was discovered, that she might want to reconsider her initial consent. It also appears that the defendant is arguing that after the marijuana was found, the search should be limited rather than expanded at that point. The defendant, however, offers no case law to support this novel argument. Again, the only way the search could be limited at that time would be for Ms. Coward to limit or withdraw her consent. There is no proof that she did so. Therefore, the police officers' expanded search was entirely appropriate under these circumstances. Consequently, defendant's objections on that basis will be overruled.

III.

Finally, the defendant takes issue with Judge Guyton's conclusion that Ms. Coward's signature on the FBI consent form supports his finding that Ms. Coward gave verbal consent to a search of the parties' apartment. In defendant's view, this document compels a completely different conclusion because it demonstrates that the officers on the scene were concerned about the initial lack of consent and were trying to buttress their search with this "after the fact" document.

In his R&R, Judge Guyton did not find it entirely necessary to reach the issue of whether the written consent had any legal impact on this case because he had already determined that Ms. Coward had given her verbal consent at the very beginning of this search. Nevertheless, Judge Guyton did find that the officers' testimony regarding the events of that day was corroborated by the written consent form signed by Ms. Coward.

The court agrees with Judge Guyton that because Ms. Coward gave verbal consent at the beginning of the search, this executed consent form has little legal significance on this case. Moreover, to the extent that it does, the court likewise concludes that the written consent reinforces Ms. Coward's verbal consent. It simply does not stand to reason that a person who initially refused to give oral consent, as Ms. Coward intimates, would then sign a document which states otherwise, especially after all of the contraband was discovered. Defendant's objection on that basis will be overruled.

IV.

For the reasons foregoing, as well as the reasons articulated by Judge Guyton in his R&R, defendant's objections to the R&R [Doc. 16] are hereby OVERRULED in their entirety whereby the R&R [Doc. 15] is ACCEPTED IN WHOLE. Accordingly, defendant's motion to suppress evidence [Doc. 10] is DENIED in its entirety whereby the court will allow the introduction of the firearms, ammunition, and drugs taken from the defendant, as well as any statements made by him, at the trial of this matter, which is presently set for October 18, 2006.

**ENTER:**

        s/ Thomas W. Phillips
        United States District Judge